Hand-Delivered

FILED
CHARLOTTE, NC

AUG 16 2021

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 3:21-cv-425-GCM

| | |
|---|---|
| Tigress Sydney Acute McDaniel<br>Plaintiff, | ) <br> ) <br> ) |
| v. | ) <br> ) <br> ) |
| The State of North Carolina, Southern<br>Association of Colleges and Schools<br>Commission on Colleges,<br>North Carolina Agricultural and Technical<br>State University, Stephanie D. Lynch, in her<br>Individual and official capacity, Keith<br>Schimmel, in his individual and official<br>capacity, Katherine Murphy, in her<br>individual and capacity, Charles Waldrup,<br>in his individual and official capacity,<br>Sherri Avent, in her individual and official,<br>Harold Martin, in his individual and official<br>capacity, Donna Eaton, in her individual<br>and official capacity, Nicole Pride, in her<br>individual and official capacity, Beryl<br>McEwen, in her individual and official<br>capacity, Clay Gloster, in his individual and<br>official capacity, Bethany Meighen, in her<br>individual and official capacity, and<br>Vincent Childress, in his individual and<br>Official capacity, Osei Yeboah, in his.<br>Individual and official capacity, Terrence W.<br>Thomas, in his individual and official<br>capacity, Melissa Holloway, in her official.<br>and individual capacity, Sherri Avent, in<br>her individual and official capacity, and<br>United States Department of Education.<br>Office of Civil Rights Division, and.<br>The University of North Carolina System,<br>Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT**

A. JURISDICTION

Jurisdiction is proper in this court according to:

__X___ 42 U.S.C. §1981. Equal rights under the law

___X___ 42 U.S.C. §1986. Action for neglect to prevent

___X___ 42 U.S. Code § 2000a; Title VII of Civil Rights Act of 1964 and all other applicable law

___X___ 20 U.S.C. § 1091 Student eligibility; 34 CFR 668.34 - Satisfactory academic progress.

___X___ Intentional Infliction of Emotional Distress (IIED) and Alternatively Unintentional Infliction Of Emotional Distress (UIED)

___X___ Gross and Vicarious Negligence For An Amount In Controversy Exceeding $75,000.00 USD

## B. PARTIES

C. The Plaintiff, Tigress Sydney Acute McDaniel born December 5, 1976, is a resident of Mecklenburg County, Charlotte, North Carolina.

D. The Defendant, Southern Association of Colleges and Schools Commission on Colleges, Inc. (hereinafter "SACSCOC"), is a nonprofit corporation incorporated in the State of Georgia, located and operated in Dekalb County, Decatur, Georgia, having authority, fiduciary duty, and scope of investigative responsibility and policy enforcement, including sanctions, regarding the compliance of educational institutions within its privy, which includes North Carolina Agricultural and Technical State University, and the Colleges and Universities within the University of North Carolina System.

E. The Defendant, Southern Association of Colleges and Schools, Inc. (hereinafter "SACS"), is a nonprofit corporation incorporated in the State of Georgia, located and operated at the same principal office and physical address for the registered agent of SACSCOC in Dekalb County, Decatur, Georgia, having authority, fiduciary duty, and scope of investigative responsibility and policy enforcement, including sanctions, regarding the compliance of educational institutions within its privy, which includes North Carolina Agricultural and Technical State University, and the Colleges and Universities within the University of North Carolina System.

F. The Defendant, The State of North Carolina (hereinafter "State"), is the primary fiduciary and governing authority, empowered under federal statutes, for all Defendants, notwithstanding its authority regarding Defendants SACSCOC and SACS located and operated in Dekalb County, Decatur, Georgia.

G. The Defendant, North Carolina Agricultural and Technical State University (hereinafter "NCAT"), is a public land grant historically black university located and operated in Guilford County, Greensboro, North Carolina.

H. The Defendant, Stephanie D. Lynch (hereinafter "Lynch"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the Assistant Director of Financial Aid and was such at all times material hereto.

I. The Defendant, Sherri Avent (hereinafter "Avent"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of

North Carolina, and is currently employed by NCAT as the Director of Financial Aid and was such at all times material hereto.

J. The Defendant, Keith Schimmel (hereinafter "Schimmel"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as an Associate Professor amd the Chair of the Applied Science and Technology Department formerly the Energy and Environmental Systems Department and PhD Program (hereinafter "EES") and was such at all times material hereto.

K. The Defendant, Katherine Murphy (hereinafter "Murphy"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as Interim General Counsel and was such at all times material hereto.

L. The Defendant, Charles Waldrup (hereinafter "Waldrup"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the University Attorney and registered agent for NCAT in its corporate capacity as publicly promulgated by the North Carolina Department of Justice, and was such at all times material hereto. Upon information and belief, Waldrup may have recently retired on September 1, 2018, but confirmation of the same has not been provided.

M. The Defendant, Harold Martin (hereinafter "Martin"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the Chancellor and was such at all times material hereto.

N. The Defendant, Nicole Pride (hereinafter "Pride"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the Interim Vice Provost for Academic Strategy and Operations and was otherwise employed by NCAT in an upper administrative capacity in the Division of University Advancement and the Office of the Chancellor at all times material hereto.

O. The Defendant, Beryl McEwen (hereinafter "McEwen"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the Interim Provost and was otherwise employed by NCAT as Vice Provost for Strategic Planning and Institutional Effectiveness at all times material hereto.

P. The Defendant, Clay Gloster (hereinafter "Gloster"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the Interim Associate Dean for Graduate Programs and Research and was otherwise employed by NCAT as a Professor, at all times material hereto.

Q. The Defendant, The University of North Carolina System (hereinafter "UNC"), for which NCAT is one of its 17 campuses, upon information and belief, is located and operated in Orange County, Chapel Hill, NC, and has been at all times material hereto.

R. The Defendant, Bethany Meighen (hereinafter "Meighen"), upon information and belief, is a resident of Orange County, Chapel Hill, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by UNC as the Interim Vice President for Academic and Student Affairs at all times material hereto.

S. The Defendant, Bethany Meighen (hereinafter "Meighen"), upon information and belief, is a resident of Orange County, Chapel Hill, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by UNC as the Interim Vice President for Academic and Student Affairs at all times material hereto.

T. The Defendant, Vincent Childress (hereinafter "Childress"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the Associate Dean for Undergraduate Education in the College of Science and Technology at all times material hereto.

U. The Defendant, Osei-Agyemang Yeboah (hereinafter "Yeboah"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as Professor and Researcher in AgriBusiness, Economics and AgriScience at all times material hereto.

V. The Defendant, Terrence W. Thomas (hereinafter "Thomas"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as Professor and Researcher in AgriBusiness, Economics and AgriScience at all times material hereto.

W. The Defendant, Melissa Holloway (hereinafter "Holloway"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the Vice Chancellor and General Counsel of Division of Legal Affairs, Risk and Compliance, and designated and listed by the North Carolina Attorney General, Josh Stein, as registered agent for NCAT since June 2021.

X. The Defendant, Sherri Avent (hereinafter "Avent"), upon information and belief, is a resident of Guilford County, Greensboro, NC, and otherwise is a resident of the State of North Carolina, and is currently employed by NCAT as the Financial Aid Director for all times material hereto.

Y. The Defendant, United States Department of Education Civil Rights Division (hereinafter "OCR"), upon information and belief, is a federal government entity located and operated in Washington, District of Columbia and empowered by the federal government as both agent and fiduciary to investigate student complaints and enforce students' rights, amongst other relevant duties, and has had such authority for all times material hereto.

## C. NATURE OF CASE AND FACTUAL ALLEGATIONS

1. On or about May 8, 1998, Plaintiff earned a Bachelor's of Science degree in Agricultural Education and Environmental Science with a specialization in Swine Husbandry and Environmental Science.

2. On or about December 12, 2002, Plaintiff completed all degree requirements for a Master's of Science in Agricultural Economics and Rural Development (with a specialization in Swine Husbandry and Wetland Bioremediation) except the defense of her thesis due to leave for recovery from a crippling car accident and death of her father.

3. On or about August 27, 2013, Plaintiff returned to complete the final requirements of her Master's degree.

4. On or about December 5, 2013, Plaintiff's Master's degree was conferred. Immediately thereafter, Plaintiff applied and was ultimately accepted unconditionally into the EES PhD program at NCAT.

5. On or about January 4, 2014, Plaintiff enrolled in the EES PhD program at NCAT, for which Schimmel was the Interim Chair of EES.

6. Despite repeated inquiry by Plaintiff, spanning over a period from January 4, 2014 to August 27, 2018, Schimmel has purported that there is no departmental or other NCAT funding to provide an assistantship, stipend, or other financial assistance and support for Plaintiff. Upon newly discovered information and belief, Plaintiff is the only graduate student currently enrolled at NCAT, and otherwise in EES, who has been offered, awarded or receiving funding. Further, upon such newly discovered information and

belief, Schimmel and Murphy, as primary instigating co-conspirators have conspired with or coerced co-Defendants to orchestrate undue and unmerited impediment to Plaintiff's matriculation, including but not limited to, denying her considerably standard funding during her PhD program, to financially hardship Plaintiff and otherwise effect an unmerited dismissal from the program or withdrawal due to such hardship, or altogether effect an ill-gotten dishonorable dismissal from the program to deny Plaintiff's successful matriculation and earned PhD degree.

7. Plaintiff possesses a 3.3 grade point average (hereinafter "GPA") in the EES PhD program.

8. Plaintiff has maintained good standing in the EES PhD program since enrolling in January 2014.

9. Plaintiff completed all required coursework for the EES PhD program in Fall semester 2015.

10. On or about December 11, 2014, Plaintiff underwent the Qualifying Exam.

11. On or about December 16, 2014, Schimmel reported to NCAT that Plaintiff failed the Qualifying Exam. On that same day, Plaintiff inquired directly with Schimmel to obtain confirmation and clarification for the grade of "U," for unsatisfactory, assigned to her completed Qualifying Exam. (See Attached)

12. On January 5, 2015, Schimmel finally responded to Plaintiff inquiry purporting again that she had "not passed the Qualifying Exam" and directing her against registering for Spring 2015 classes to the extent that he purported that she would "be dropped from any Spring 2015 EES classes for which [she] register[ed]." (See Attached)

13. On or about March 27, 2015, after repeated inquiry and request for disclosure from December 16, 2014 to March 27, 2015, Plaintiff formally appealed the grade assigned for her Qualifying Exam under the claims that Schimmel had committed academic fraud and engaged unethical conduct and other violations of NCAT policy to falsify a record against her satisfactory completion of the Qualifying Exam.

14. On or about May 28, 2015, after the expiration of an entire semester, NCAT determined that Schimmel had indeed committed several, and markedly egregious, violations of NCAT policy concerning the grading of Plaintiff's Qualifying Exam. Further, NCAT determined that Plaintiff's grade appeal was merited, and that her grade need be changed to "S," to reflect satisfactory completion of the Qualifying Exam. (See Attached)

15. Since that time, Schimmel has engaged and maintained an unrelenting, egregious pattern and practice of retaliatory academic bullying and bias against Plaintiff resulting in gross undue delays in her matriculation, financial hardship, incurrence of tuition and fees for additional semesters related to the undue delays in her matriculation, emotional suffering and distress. Despite the extensive and notably verified record of Schimmel unmerited disdain against Plaintiff, NCAT has failed to uphold their fiduciary duty in regulating and prohibiting such egregious faculty misconduct as set forth in their Faculty and Student Policy and all other applicable University Policy.

16. On or about June 1, 2015, Plaintiff's grade for the Qualifying Exam was changed from Unsatisfactory ("U") to Satisfactory ("S"), which allowed her to finally enroll for courses to continue her matriculation.

17. On or about October 22, 2015, Plaintiff successfully underwent the Preliminary and achieved candidacy in the EES PhD program. To date, Plaintiff has been diligently working on her research and dissertation since that time.

18. On or about September 22, 2015, Plaintiff submitted her dissertation proposal (hereinafter "protocol") to the IRB for review and approval, which is a prerequisite to begin research for the dissertation requirement of the EES PhD program.

19. On or about October 2, 2015, Plaintiff's protocol was approved under exemption.

20. On or about October 2, 2015, due to Schimmel's insistence upon lack of funding for Plaintiff's research budget, at the advisement of her dissertation committee chair, she revised her protocol to increase the sample size from 100 to 300 and the survey methodology from 2 stage to 1 stage, which would lessen the budget and maintain the validity. Over the course of the following two years, Schimmel subjected Plaintiff to increasingly unmerited claims against her dissertation research proposal, albeit regarding budget or methodology, to effect undue, and markedly retaliatory delay, in the start of her dissertation research. During this time, for the express purpose of maintaining good standing in the EES PhD program, Plaintiff incurred additional tuition and fees for each semester to maintain "continuation of enrollment."

21. On or about March 30, 2017, Plaintiff submitted her revised protocol to the IRB for review and approval. This time, Eaton was the examiner. Upon newly discovered information and belief, Murphy also served in an examiner or decision-making capacity for the IRB during this time as well, and all times material to the review of Plaintiff revised protocol. Eaton and Murphy purported that Plaintiff's revised protocol was not eligible for exemption as it had been before, and further purported that her protocol did

not merit approval. The incessant noncompliance and bias against Plaintiff continued for nearly two full academic years, most notably absent any merited justification for the same, despite innumerable inquiries by Plaintiff.

22. Upon information and belief, Schimmel, Eaton and Murphy conspired to unjustly deny Plaintiff's revised protocol, and otherwise effect significant delay in the approval of such protocol and consequently delay her matriculation or altogether deny her earned opportunity to complete final requirements of her PhD program.

23. All Defendants conspired and did carry out tortuous misconduct that directly resulted in the impediments, exposure to University disdain amongst faculty, administrators and staff, and academic bullying and harassment, and intentional and otherwise unintentional infliction of emotional distress against Plaintiff. All Defendants had express or reasonable knowledge that Plaintiff was undeserving of any of the torts to which she was subjected, and still yet corrupted their fiduciary duty to carry out tortuous conduct that they knew would negatively impact Plaintiff's matriculation, financial stability as a student and ability to pay tuition and fees; and they further knew that such torts would or otherwise could result in significant emotional distress for Plaintiff. Even more so, Defendants NCAT and UNC are vicariously liable for torts by other Defendants, having failed to protect Plaintiff from the tortuous misconduct of their employees who are Defendants in this action.

24. Defendants acted intentionally and recklessly, and most markedly repeatedly and increasingly so, to the extent of bullying, victimization, and coercion.

25. Defendants' conduct was extreme, egregious, outrageous, and unconscionable.

26. Defendants' tortuous conduct is the cause of the distress Plaintiff has and continues to suffer.

27. Plaintiff suffers severe emotional distress, financial hardship, and considerably delayed matriculation as a direct result of Defendants' conduct.

28. On or about July 5, 2017, after Plaintiff asserted complaints against Eaton et alii for the undue delay of the review and approval of her revised protocol, Plaintiff's revised protocol was approved by another IRB examiner, Brian Sims, who is not a Defendant in this action. Thereafter, Plaintiff was finally afforded rightful opportunity to begin research to complete her dissertation, which is the only requirement remaining to complete her PhD degree, aside from two journal articles that needn't be published. Plaintiff immediately distributed her survey and otherwise continued to prepare for her Final Defense, which would be expectedly scheduled during Fall semester 2017.

29. On or about May 14, 2018, after applying and registering for Summer 2018 under the advisement that Plaintiff's advisor would schedule her Final Defense during the summer, Lynch informed Plaintiff that she was no longer eligible for Financial Aid under a purporting that she was "not meeting Satisfactory Academic Progress (hereinafter "SAP")."

30. On May 14 and 15, 2018, Lynch purported that SAP appeals were not available during the summer (See attached.)

31. Despite repeated inquiry by Plaintiff, Lynch nor Avent could explain why Plaintiff had received untimely notice of the purported SAP ineligibility. To date, no Defendant has explained

    a.   why Plaintiff received untimely notice of the purported SAP ineligibility,

    b.  why Plaintiff had not been deemed ineligible before this juncture,

    c.  and further why an appropriately federally compliant alternative assessment was not established to address the extenuating and markedly, merited circumstances of Plaintiff's case that would allow her SAP eligibility to continue.

32. On or about July 17, 2018, Plaintiff submitted formal request for explanation regarding the lack of timely notice for the purported SAP ineligibility, having communicated with Murphy, Lynch, and Avent specifically, and other Defendants as well.

33. A student must be enrolled in full time hours to qualify for financial aid. Since first applying for financial aid in August 2013, NCAT, Avent and Lynch have consistently advised, directed even, Plaintiff that:

    a.  Nine credit hours during the Fall and Spring semester meets that requirement during the general academic year.

    b.  Five credit hours for each summer session meets that requirement specifically for the summer.

    c.  If Plaintiff failed to enroll for the above detailed credit hours respectively, she would not be eligible for financial aid.

34. NCAT, Avent, Lynch and all other Defendants were and have remained expressly aware that Plaintiff was completely dependent upon financial aid, and more specifically, PLUS Loans, and could not otherwise afford tuition and fees through alternative funding, albeit credit, need, or generally based.

35. Plaintiff's GPA is fixed at 3.3. Because Plaintiff is a PhD Candidate and the Continuing Dissertation course code and other similar course codes in which she enrolls to satisfy continuation of enrollment entail no letter grade, her GPA remains fixed. Upon

information and belief, whilst the Plaintiff accepted PLUS loans to pay for the costs of tuition and fees to maintain required continuation of enrollment against dismissal from the PhD program, Defendants conspired to create academic conditions of excessive credit hours taken to feign a valid reason to terminate her financial aid eligibility. However, in doing so, Defendants failed to "establish a reasonable satisfactory academic progress policy for determining whether an otherwise eligible student is making satisfactory academic progress in his or her educational program and may receive assistance under the title IV, HEA programs," and thereby failed to comply with federal law. Title 34 regarding Education with specificity to § 668.34 regarding satisfactory academic progress, "The policy [must] specify the grade point average (GPA) that a student must achieve at each evaluation, *or if a GPA is not an appropriate qualitative measure, a comparable assessment measured against a norm.*"

36. Lynch, Waldrup, Avent and Murphy have all purported that Plaintiff is not meeting SAP because she has "exceeded 150% of the total expected credit hours for the EES PhD program in which she is enrolled." Title 34 regarding Education defines the maximum timeframe for an undergraduate program as "a period that is no longer than 150 percent of the published length of the educational program." Markedly, this definition does not apply to graduate programs. Plaintiff is enrolled in a graduate program, and has been for all times material thereto. Title 34 states, "For a graduate program, a period defined by the institution that is based on the length of the educational program." NCAT policy and the EES handbook states that ten years is the maximum timeframe for any of the NCAT doctoral programs." Plaintiff has not exceeded that ten year timeframe. In fact, Plaintiff has been enrolled from January 2014 to present day, totaling approximately for years,

which is considerably consistent with the standards of completion for similar PhD programs and the matriculation of other students in the same EES PhD program.

37. NCAT has failed:

   a.   to establish a reasonable satisfactory academic progress policy;

   b.   To implement a comparable assessment where GPA is not an appropriate qualitative measure and one that is consistently applied to all students within categories of students;

   c.   To properly adjust evaluation under explicit consideration for the undue delays in Plaintiff's matriculation caused by the Defendants' collective and individual misconduct;

   d.   To comply with the federal statutory definition for maximum timeframe for a graduate program;

   e.   To concisely articulate and establish a clear assessment that is not ambiguous or illogical or inapplicable to program requirements;

   f.   And have otherwise failed to fully comply with federal laws regarding financial aid assistance and eligibility for graduate students like Plaintiff.

38. Alternatively, aside from the express violations of the above stated federal statutes, NCAT and all other Defendants are liable for gross and vicarious, having subjected Plaintiff to egregious torts that have resulted in incurrence of tuition and costs for credit hours each semester, and markedly unjustly and unduly so, as a direct result of the undue and excessive delays in her matriculation, and consequently is the direct cause for the excessive credit hours she has been effectually forced to undertake. Based upon Plaintiff's academic performance and adherence to program rigor, she could and would

have completed the program, and deservedly earned her PhD by or before Fall 2016, absent Defendants' knowing, malicious torts.

39. On or about May 15, 2018, Plaintiff made a formal request to NCAT, together with all other Defendants, except UNC and Meighen, for alternative funding in response to the untimely notice of the purported SAP ineligibility. To date, no Defendant has directly responded to that formal request.

40. On or about May 17, 2018, Plaintiff escalated her inquiry to Avent.

41. On or about May 18, 2018, during a meeting with Avent, Plaintiff discovered that SAP appeals were indeed available during the summer. Plaintiff submitted the SAP appeal during that meeting, and upon information and belief, Avent feigned no bad faith regarding extending the appeal during the summer. Ultimately, Avent approved the appeal. However, Plaintiff asserts that Avent's approval was orchestrated to conceal her involvement in Lynch's torts.

42. Because Plaintiff's advisor was out due to surgery and recovery during the summer, Plaintiff was not able to schedule her Final Defense. Consequently, Plaintiff had to register and submit a SAP appeal for Fall semester 2018.

43. A student's Final Defense is NOT scheduled independent from advisement, availability, agreement, and/or permission from the student's dissertation committee advisor and other members.

44. Upon information and belief, Plaintiff suspected further tortuous misconduct by Avent and Lynch, and consequently, submitted a University complaint against Avent and Lynch to preserve her rightful and lawful opportunity to federal financial aid assistance.

45. On or about July 21, 2018, Avent denied Plaintiff's appeal, markedly prior to the decision by NCAT on Plaintiff's complaint against Avent and Lynch for violations of 20 U.S.C. § 1091 Student eligibility; 34 CFR 668.34 and federally regulated negligence.

46. On or about August 12, 2018, Plaintiff submitted an inquiry to Schimmel regarding available TA positions. Plaintiff also sought to meet with Pride and McEwen to seek relief from untimely and unlawful cessation of financial aid assistance and consequential financial hardship and inability to pay tuition and fees for Fall 2018.

47. Since 2015, Plaintiff had consistently submitted inquiries about available teaching assistant (hereinafter "TA") positions to Defendants, and had not ever been offered or assigned a TA position, which is considerably standard for any PhD program, and specifically for those at NCAT, until her escalated inquiry on or about August 14, 2018.

48. On August 14, 2018, Plaintiff received a letter from McEwen coercing her with "a small grant to cover one credit hour of tuition and fees to finish up her dissertation by October 19, 2018." All Defendants are expressly aware that Plaintiff, and most markedly, all students lack the unilateral authority or control to undertake a Final Defense or any other final requirements of any graduate degree. Accordingly, all Defendants fully and intentionally acted in bad faith to coerce Plaintiff, believing she was desperate to avoid losing good standing in the program and the imminent dismissal from the program in the event that she failed to maintain continuation of enrollment, by offering to pay her tuition and fees under unreasonable, improper and considerably unethical conditions. Plaintiff immediately rejected the "offer" from McEwen and expressly the reasons for the same, consistent to all alleged herein, and continued to seek resolve through tuition remission benefits available from her TA positions and need or merit based scholarships.

49. On or about August 15, 2018, after receiving a response from Schimmel that Plaintiff could approach departments directly about available TA positions, Plaintiff approached the Biology and Chemistry Departments (hereinafter "Biology" and "Chemistry" respectively), and did successfully obtain two TA positions, one in each department, teaching two labs in Biology and one in Chemistry.

50. NCAT advised Plaintiff that she could not assume any more TA assignments because she had reached the maximum University payments allowed (totaling $6,250.00 USD) with the assignments abovementioned. Plaintiff has consistently received approximately $7,800.00 USD each semester (approximately spanning over a four month period) from PLUS Loan payments, after the deduction of tuition and fees, and has planned her budget around that amount since beginning her PhD program in January 2014. The lost aid is approximately $1,550.00 USD.

51. On or about August 15, 2018, Plaintiff began the TA positions, and did, in fact, report to each scheduled lab period and carried out all tasks required for such positions. To date, Plaintiff has continued to timely report for each lab period and carry out all tasks required for both TA positions.

52. From August 15, 2018 to present day, Plaintiff has inquired about the proper processing of her tuition remission benefits. In the meantime, Plaintiff has made payment arrangements with the Treasurer's Office to satisfy her student account balance. To date, no Defendant has responded to her inquiries regarding tuition remission benefits.

53. On or about August 15, 2018, Plaintiff visited Pride's office again to follow up regarding her formal requests. Pride feigned sincere concern about Plaintiff's suffering, and advised that "we'll just forget this letter [referring to McEwen's offer] and further that she'd

approve University funds to pay for the cost of Plaintiff's tuition (one credit hour of EES/AST 997 Continuing Dissertation), and unconditionally so." However, on or about August 18, 2018, after Plaintiff inquired about a billing notice for tuition and fees, Pride responded "as promised in the Provost's letter we will take care of your tuition costs." Pride did knowingly and intentionally engage conspired coercion to bully and intimidate Plaintiff against natural matriculation.

54. In fact, on or about August 22, 2018, after Plaintiff reiterated that she had obtained TA positions and sought to confirm which course was appropriate (EES/AST 997 or GRAD 999) to proceed upon the tuition remission benefits and most economical tuition costs, Pride responded:

*Hi Tigress,*

*I hope the semester is going well for you and that you are feeling much better.*

*As you already know, GRAD 999 is a distance learning course. Before we move you from AST 997 to GRAD 999, we are working to ensure that your being enrolled in a distance learning course does not interfere with your ability to TA. Either way, our processes to change the course and refund the provost's budget do not impact your ability to proceed with your TA assignments and course to successfully complete your dissertation this semester. You do not need to concern yourself with the cost; whatever it is we will pay it. Any differences in money will not be given to you through a scholarship or any other form of disbursement. It is university funds.*

**Given your TA positions, no one expects you to complete your degree by October 19, 2018. You have until the end of the Fall 2018 semester.**

*Per Kathy Murphy's email response to you dated August 17, 2018, your student complaint was addressed in Provost McEwen's letter dated August 14, 2018.*

**Once again, we will not be honoring your formal request for a $1,500 scholarship, nor will you be receiving any additional financial aid.**

**This matter is considered closed, and we will not be responding to any additional emails concerning this issue.**

*Have a fantastic semester!*

*Thank you. Nicole*

*Nicole Pride*
*Interim Vice Provost for Academic Strategy and Operations*
*North Carolina Agricultural and Technical State University*
*1601 East Market Street*
*Dowdy Administration Building*
*Greensboro, NC 27411*
*p. 336.334.7977 | f. 336.334.7136*
*npride@ncat.edu | www.ncat.edu*

To date, no Defendant has responded to Plaintiff's requests to receive confirmation for the processing of her tuition remission benefits. Plaintiff formally rejected any payment of her tuition by NCAT unless NCAT clearly and formally stipulated that such payment would be applied without any conditions. To date, no Defendant has verified which course is appropriate to proceed upon the tuition remission benefits and most economical tuition costs, and most markedly, no Defendant has responded regarding the unaddressed issue of payment of Plaintiff's tuition without conditions.

55. On or about August 17, 2018, after Plaintiff inquired again about the need or merit based scholarship, Pride responded that such had been "denied."

56. On or about August 18, 2018, to make up for the lost aid, Plaintiff made a formal request, and renewed that request due to lack of response, for a need based or academic based scholarship from NCAT and Gloster in the Graduate School. To date, Gloster has not responded.

57. On or about August 22, 2018, Plaintiff escalated her complaint to Meighen and UNC, after no relief from her University complaint against Avent, Lynch, Murphy, Gloster, McEwen, Pride for the most recent acts of coercion and other torts, and altogether against

all Defendants for the pattern and practice of tortuous misconduct and all complained of herein since she reported Schimmel's first egregious tort against her.

58. On or about August 24, 2018, Waldrup purported that Plaintiff "[would] not be receiving any merit or need-based scholarships from the University, including the Graduate College." Plaintiff immediately responded to Waldrup asking for reasons and any other explanation for such purporting. To date, no Defendant has responded to such request.

59. On or about September 7, 2018, Meighen, on behalf of UNC responded to Plaintiff's complaint purporting that NCAT had handled Plaintiff's appeal correctly. Markedly, Meighen failed to address all of the issues and claims presented in Plaintiff's complaint submitted on August 22, 2018, and only scantily addressed the specific matter of the premature and unlawful cessation of Plaintiff's financial aid.

60. On or about August 22,2018, Waldrup sent Plaintiff an email purporting that she must submit a formal declaration that Fall 2018 semester would be her final semester in order to keep her TA positions. Waldrup purported that such was a requirement for students taking GRAD 999. Plaintiff immediately reiterated her previous requests for verification of the appropriate course to take to maintain her TA positions and tuition remission benefits. Plaintiff also pointed out that no such requirement appeared in University policy, and due to lack of unilateral authority to schedule or dictate her own Final Defense, she responded that she could not reasonably make any such declaration without the commitment of her advisor and stipulations by NCAT that they would cease all torts that had consistently resulted in undue and unmerited delays in her matriculation aforetime.

61. Plaintiff has made repeated formal requests and demands to be registered for full-time credit hours in EES/AST 997 Continuing Dissertation, but NCAT and other Defendants have failed to respond.

62. On or about September 25, 2018, notably one month after Plaintiff's last inquiries, which have not been answered to date, Gloster sent an email directing her to submit the formal declaration that Fall 2018 semester would be her final semester, and further to submit such declaration by October 1, 2018. Moreover, Gloster has threatened to terminate Plaintiff's TA positions if she does not submit such formal declaration by that time. The language of the University policy states that "students may be eligible for teaching assistantship in their final semester," but there is no requirement that enjoins Plaintiff to submit a formal declaration. Plaintiff asserts that these actions are intended to increasingly bully and coerce her into a situation through which Defendants can feign some wrongdoing or failure on Plaintiff's part to defraud just reason to dismiss her from the PhD program.

63. To date, NCAT and other Defendants have failed to address:

    a. Proper registration in full time credit hours of EES 997;

    b. Tuition remission benefits from TA positions;

    c. Requests for explanation regarding denied need or merit based scholarships;

    d. And proper relief and remedy from egregious pattern and practice of tortuous conduct by Defendants.

64. Defendants are fully aware that improper registration, termination of her TA positions, failure to process her tuition remission benefits, and failure to respond to her reasonable and proper inquiries will result in impediment to her matriculation. Plaintiff asserts that

Defendants have orchestrated these conditions to unlawfully deny Plaintiff's rightful opportunity to complete her degree.

65. On or about October 2018, Plaintiff met with Yeboah to discuss dissertation edits and scheduling of my final defense.

66. On or about November 8, 2018, at the request of Yeboah, Plaintiff emailed a word document file attachment of my dissertation, complete with the edits/revisions advised by Yeboah. In that email, Plaintiff also inquired about the scheduling of my final defense.

67. From November 8, 2018 until roughly two weeks ago, Plaintiff repeatedly emailed Yeboah to inquire about scheduling for my final defense. Yeboah didn't answer any of my emails.

68. On or about November 13, 2018, Plaintiff inquired directly with Sandra Simmons, Yeboah administrative assistant, (hereinafter "Simmons") via email and notably providing courtesy copy to Yeboah, because Yeboah hadn't answered any of my emails. Simmons responded:

*Good afternoon, Ms. Tigress,*

*Yes, Dr. Osei has been out of the office on back to back travel since late October early November. He is back in the office and I'm confident that he will respond to your email.*

*Thank you,*
*Ms. Sandra R. Simmons*

69. Yeboah did not respond at all during the entire Fall 2018 semester.

70. On or about December 7, 2018, Plaintiff submitted the routine email that she submits each semester to Schimmel and Toni Jarrell, his administrative assistant (hereinafter

"Jarrell") requesting PIN for Spring 2019 registration. Each semester, when it is time to register, Schimmel and Jarrell, and now other NCAT officials such Kelly Rowett James (hereinafter "James"), have repeatedly delayed and impeded my registration without just cause.

71. On December 17 and 18, 2018, Plaintiff renewed her requests for Spring 2019 registration. Plaintiff also submitted a formal request that they enable the system to allow me rightful opportunity to self-register. Each semester they have failed to lift this effectual block to self-registration. To date, NCAT has not responded to my request. This continued until January 4, 2019, and after escalating my registration to UNC System, Plaintiff was finally registered for Spring 2019.

72. On or about February 26, 2019, after efforts to reach Yeboah, Plaintiff sent another email, this time proposing dates for my final defense, and providing courtesy copy to my dissertation committee. At that time, Plaintiff discovered that one of the members, Claude Lamb, had evidently left the University. Plaintiff received no notice. This was the second occurrence of discovering the retirement or departure of faculty serving on my dissertation committee. Because Plaintiff is required to identify willing and appropriate faculty to serve, this has significantly delayed my natural matriculation.

73. On or about March 19, 2019, Plaintiff finally received an email from Yeboah who appallingly wrote from a disposition of shifting blame to her, purporting that she failed to submit my dissertation with the edits he advised. He also blamed and accused Plaintiff of submitting "only the results section" of her dissertation. Plaintiff responded that she had no separate files for different sections of my dissertation, and that the notion was absurd. Plaintiff also advised Yeboah of the date that she sent it, and forwarded record of the

same to him by email. To date, Yeboah has continued to purport that he has not received my emailed dissertation.

74. On or about April 13, 2019, after receiving a University mass email regarding Fall 2019 important dates, Plaintiff submitted a considerably routine request for Fall 2019 registration. Schimmel responded asking about the status of my matriculation tasks. Plaintiff immediately responded affirming and reiterating the indisputably obvious that she was effectually waiting on them, and assuredly not the other way around.

75. On or about April 15, 2019, Plaintiff renewed my request for registration, this time providing courtesy copy to NCAT and UNC gatekeepers and counsel. Plaintiff received no response.

76. On or about April 17, 2019, Schimmel responded,

> *Ms. McDaniel – Our recommendation is to wait until August to consider registering for the 1 credit hour course. At that time, you and your research adviser can make a more informed decision as to whether you will be ready to defend your dissertation in the fall semester.*
>
> *Keith A. Schimmel*
> *Director, Applied Science & Technology PhD Program*

77. On April 17, 2019, Plaintiff responded to Schimmel including all relevant administrators escalating her request for Fall 2019 registration to a demand for the following reasons:

   a. *NCAT and AST policy requires a student to remain continually enrolled to maintain good standing;*

   b. *I am not at fault for the undue and maliciously conspired delay in my matriculation;*

c. *Confirming that I have met all requirements expected of PhD candidates and am only awaiting the scheduling of my final defense and review of my two journal articles which needn't be published.*

78. As of 6 p.m. April 17, 2019, Aggie Access reflects that Plaintiff was not registered for Fall 2019.

79. Regarding gender discrimination, Schimmel has repeatedly made remarks about females being more aptly teachers than actual scientists on several occasions and notably even in front of fellow students in class. He has taken every opportunity to demean Plaintiff, despite her satisfactory academic progress and expert experience. He has even refused to provide assistantship funding to Plaintiff in her respective field, purporting that she could only be considered for a Beginner's Math teaching assistantship. He has been unrelentingly disrespectful and biased against Plaintiff.

80. On May 15, 2019, Plaintiff discovered that Dr. Yeboah, my dissertation advisor, and notably one of the faculty at issue for violative acts against me, has retaliatorily entered an Unsatisfactory (U) for my AST 997 Continuing Dissertation course for Spring 2019.

81. For Fall 2019, Keith Schimmel, once again, refused or otherwise unduly delayed and conspired and carried out impediments to my registration under a purporting or implication that Plaintiff hadn't maintained satisfactory academic progress:

*Keith Schimmel does not regularly make inquiry about my academic progress at the end of the preceding semester, which substantiates a likelihood that he is not authentically concerned with my academic progress at all, and instead raises the same issue of satisfactory academic progress at the beginning of each semester to fabricate justification for delaying my registration, and ultimately clearly conspiring concerted steps to deprive me from*

*merited registration, then raise the issue that I have failed to maintain continual enrollment, and finally assert the same as substantiation for dismissing me from the program, and knowingly and maliciously, dismissively so, and in the few instances where he has inquired about my academic progress in a preceding semester, his reasoning is oddly predicated upon an anticipation that I won't have likely made satisfactory academic progress, which in hindsight corroborates Dr. Yeboah voluntary confession that Clay Gloster and Keith Schimmel told him to ignore my contact for a full academic year:*

## Keith Schimmel <schimmel@ncat.edu>

Aug 17, 2020, 10:21 AM

to me, Connie, Samuel, Terrence, Angela, Kristy

Dr. Thomas — Please provide an update on progress toward dissertation completion that was made during last spring and this summer. Has there been a meeting with the dissertation committee and feedback provided to the student based on the attached rubric? If not, please schedule a meeting as soon as possible and provide feedback to the student on her progress.

Thanks,
Keith A. Schimmel
Director, Applied Science & Technology PhD Program
To find out more about the AST PhD Program: ncatcost.info
Education Director, NSF CREST Bioenergy Center
NC A&T PI, NSF AGEP-NC

## RE: Fall 2019 Registration - 3rd Request

## Keith Schimmel <schimmel@ncat.edu>

Wed, Apr 17, 2019, 10:49 AM

to me, Toni, Kelly, Sharon, Saundra, tcshanahan@northcarolina.edu, mrdelafield @northcarolina.edu, cojohnston@northcarolina.edu, Pamela, president@northcaro lina.edu, rfuse-hall@sacscoc.org, The, Edward, renae2627@gmail.com, forprosecutiononly@gma il.com, Anthony

Ms. McDaniel – Our recommendation is to wait until August to consider registering for the 1 credit hour course. At that time, you and your research adviser can make a more informed decision as to whether you will be ready to defend your dissertation in the fall semester.

Keith A. Schimmel
Director, Applied Science & Technology PhD Program
Education Director, NSF CREST Bioenergy Center
NC A&T PI, NSF AGEP-NC

Plaintiff submitted a request to be registered in the Continuing Dissertation course that she has taken each semester as she pursues relief to undergo her final defense. Registration is supposed to be basally procedural, and yet each semester Keith Schimmel unduly delays, impedes or attempts to deny Plaintiff's registration, and always for empty reasons. Schimmel suspectedly communicated his disdain and unlawfully conspired bias and torts, directed at Plaintiff, to his new assistant Connie Mayberry, who markedly last semester engaged Plaintiff in a considerably deplorably unprofessional manner. Most students can simply register without the assistance of faculty or advisors. Plaintiff has no other intentions than to register for only that which she needs to complete my degree, which of course, is the Continuing Dissertation course.

82. On September 2019, after having no relief from attempts to resolve the grade appeal directly with Dr. Yeboah, Plaintiff filed a complaint:

*I previously submitted a complaint against Anthony Yeboah for effectually ignoring my communication for a full academic year and failing to carry out any duties as my dissertation committee advisor and chair and having then reported a U as my grade for AST 997.*

*The grade appeal committee decided in my favor, after a hearing during which markedly Yeboah (in excited surprise discovery) admitted that Keith Schimmel and Clay Goster told him "not to respond nor communicate with me." Yeboah had absolutely no justification for his impropriety. I*

*have been repeatedly, consistently, increasingly subjected to racism, genderism, political bullying, general impropriety, academic bullying at the hand of primary tortfeasor - Keith Schimmel. After the decision as delivered by the grade appeal committee, Yeboah resigned as my chair purporting reasons of illness and consequential inability to continue serving. The next day, two other members resigned, members who I markedly did not ever meet in person nor with whom had I any personal academic relationship prior to appointment of one them, Musibau Shofoluwe, by the Graduate School, and Godfrey Ejimakor. Neither of them provided any "acceptable" reason for resigning, and likely resigned in retaliation against the decision made by the grade appeal committee and my initial complaint against Yeboah. The only member to remain was Terrence Thomas. I then immediately began seeking replacements. Thomas agreed to serve as my chair, and I submitted forms to revise the committee accordingly. Later, Niroj Aryal and Chastity English-Warren agreed to serve as committee members. I continued to send invitations but was not able to secure any other replacements that semester. I sought intercession from University counsel. While awaiting resolution, my now advisor and I began to revisit all that had been initially composed and discussed and vetted by Yeboah. Thomas began making suggestions that we (1) revise the study again and try to "enrich" the response rate (2) survey politicians in Agriculture/Environmental Sciences or Related Agencies to which I expressed my concerns. It is noteworthy to acknowledge and reiterate that the torts and impropriety began after Chancellor Emeritus Fort told me in confidence that, "the politics have changed." He shared nothing else and has not responded to any of my follow-up inquiries nor interceded on my behalf to reveal the immeasurably deplorable misconduct to which I've been subjected. The overtone of this concerted misconduct and academic bullying and egregious impediment of my natural matriculation has consistently been - "you should survey the politicians" or "you should*

*include politics in your analysis." I have NOT ever brought my political aspirations into my program. Since realizing the overtone of their conspired acts, I have remained disconnected to that scope. In fact, I do not visit campus unless imperative, and I don't fraternize nor really engage anyone outside of the specific scope of finalizing the composition of my dissertation. It's also notable that I have effectaully "lost 3 full years" having effectually no one respond to me or before that having been delayed approval of my IRB protocol for 2 full academic years without merit. So, I explained to Thomas (who already knows because he's been cc'd in emails regarding the incidents where appropriate) all of the very likely inevitable hurdles we face if we submit yet another revised protocol. I asked if he would cover the budget for the mailings that are required even if we conduct phone surveys. I reminded him recently that my son is in the vulnerable community and coming to campus was not safe for me nor my son. I even submitted the formal request to have my final defense facilitated virtually. Yet, Thomas began again this semester with the same overtone - suggesting now that I "enrich" my study with listening sessions that he very interestingly wanted to classify as "ethnographic" and "people-focused" study. I again expressed my concerns as a Scientist. I've undertaken Economics to understand all the facets of my specialization and application per public valuation but I not ever intended my study to be some sort of "political rally in support of whatever politicians decide about the valuation for wetlands." He tried on several occasions very manipulatively to convince me that the politicians "are the voice of the people" and therefore "apt" to use their responses to "enrich" my data. I expressed my concerns against padding my data which is straightly research fraud and I expressed my concerns about what he had manipulatively attempted to make sound so appealing and markedly not improper via semantics. I begged of him and the committee members to understand the very real impediments to what Thomas suggested. And ironically*

*even Thomas' correspondence to an extension agent or a NC State University representative went unanswered over the summer. I reiterated that I've been stalled for so long and unduly and unjustifiably so - and have repeatedly asked to discuss a viable way to just move forward and finish the composition of my dissertation. It's also noteworthy that Schimmel once again "denied my registration" by purporting once again impliedly (when before he has made these unfounded accusation expressly) that I have not complied with the rigor of the program. So in a last resort to try once more to seek clarity, after no responses form the committee nor Thomas, and after notably submitting the requested "2 page reports" requested by Thomas and revised research questions and complying with every other request, most markedly - immediately so - I sent an email to the committee seeking clarity again explaining once more that I couldn't reasonably finish the composition of my dissertation without "consensus" from the committee or otherwise a non-violative nor fraud-based way of padding my data ... again under the advisement from Thomas that we would still survey these politcians despite my concerns because he didn't feel that I had even enough data for qualitative analysis. I sent that email on August 29, 2020. On September 1, 2020 I received an email from Thomas, notably cc'ing English, Aryal, Schimmel and Gloster stating:*

*"Dear Ms. McDaniel,*
*This serves to inform you that committee members Dr Chastity Warren-English and Dr. Niroj Ayal have resigned from your dissertation committee. I am also informing you that I am resigning from your committee effective immediately.*

*Terrence Thomas"*

*What's most notable and exceedingly indisputably improprietous here is that neither Aryal nor English provide direct communication of their resignation, and of course, it included courtesy copy to 2 main tortfeasors in this entire ordeal - notably 2 gatekeepers who clearly have absolutely no intention to uphold University policy against all the torts and misconduct they've conspired and undertaken and carried out.*

*I am seeking a hearing on the pattern and practice of impropriety and willful malicious repeated unceasing violations of law and University policy to which they've subjected me and increasingly so. They have shown absolute reckless unmitigated abandon of fairness and equal treatment, non-politically driven academia and continue to handle my degree or final matriculation steps as some sort of despicable chess game attempting to bullying and even coerce me at every turn toward the end of evidently including whatever political scope they intend to taint my study with and/or secure an ill-gotten dismissal from the program - neither of which is proper. lawful nor merited.*

83. On or about September 26, 2019, Plaintiff filed complaint against NCAT et alii with SACSCOC and SACS, which was returned improperly handled and premature dismissed nearly 30 days later.

84. On or about December 2019, Thomas, the sole remaining dissertation committee member, agreed to serve as Plaintiff's advisor. Shortly thereafter, Plaintiff secured two replacement dissertation committee members.

85. In the Fall semester of 2020, on or about September 1, 2020, only 3 days after the start of the semester, Thomas resigned by email, and gave notice of the resignation for the other

two newly secured members, all without providing reasons, and most markedly against University policy, which governs the reformation of a dissertation committee.

86. At the close of Fall 2020 semester, while still asserting relief measures and efforts to reform dissertation committee, Plaintiff received a notification that Thomas assigned an Incomplete ("I") as her final grade. Thomas did not respond to Plaintiff's initial inquiry regarding his resignation and notice of resignation for the other two committee members, nor did Thomas respond to any communication that Plaintiff sent throughout this semester. Thomas, thereby, violated University policy which mandates that he carry out specific professorial and advisory tasks to support doctoral students, and especially those for whom they serve as advisor.

87. From December 2020 to Spring 2021, Gloster, Thomas and Childress have obfuscated University policy regarding grade appeals, purporting that an appeal was not ripe because an "I" is not "a grade," and thus ineligible for appeal. Thomas and Gloster conspired to unilaterally reassign Thomas as Plaintiff's advisor, markedly after Plaintiff filed a student complaint against Thomas, and Thomas did factually assume the role of Plaintiff's advisor and directed her to revise her research to explicitly consider the opinions of current elected officials and administrative officials in Agriculture related state government agencies, which is complete abandon from Plaintiff's primary scope of research and notably previously approved International Research Board protocol. Thomas, Gloster and Childress, through such acts, demonstrated that they were "in bed" with all other Defendants and motivated by discrimination on the basis of Plaintiff's political affiliation and political bullying.

88. Plaintiff refused to concede to explicitly consider elected and other administrative officials in her research study. In retaliation, Thomas assigned an "F" as Plaintiff's final grade for Spring 2021 semester, which exposes Plaintiff to dismissal from the doctoral degree program.

## D. CAUSE OF ACTION

Plaintiff, *pro se*, proceeding upon my Complaint as an indigent party, allege that her constitutional rights, privileges or immunities have been violated and that the following facts form the basis for her allegations:

### FIRST CAUSE OF ACTION
(Conspiracy Against Equal Rights Under The Law Pursuant to 42 U.S.C. § 1986)

89. Plaintiff realleges, reasserts, incorporates all set forth in paragraphs 1 through 88.

90. Defendants conspired for the purpose of impeding, hindering, obstructing, or defeating the due course of justice in the State of North Carolina, with knowing and malicious intent to deny to Plaintiff the equal protection of the laws, NCAT and UNC Policy, and all other Federal Protections and to cause further injury to her, even after having full knowledge of the emotional distress and significant financial hardship, both present and foreseeable future, that she would suffer. Defendants were fully aware, and even willfully ignorant, and grossly and otherwise vicariously negligent, in their acts of conspiracy against Plaintiffs' lawful assertion of their rights against retaliation, coercion, harassment, intimidation, bullying, victimization and all other torts.

91. Defendants have willfully ignored or maliciously obfuscated Plaintiff's rights as student to enforce the contractual relationship between herself and Defendants, entities and persons regarding the educational institution and degree program, and Plaintiff's rights as a United State citizen to enforce such contractual relationship and the terms expressly stipulated or implied, and rights against discrimination and full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

SECOND CAUSE OF ACTION
(42 U.S.C. §1986. Action for neglect to prevent)

92. Plaintiff realleges, reasserts, incorporates all set forth in paragraphs 1 through 91.

93. All Defendants are liable for neglect to prevent having failed to protect Plaintiff from Defendants' innumerable and increasingly unrelenting torts, and have otherwise failed to prevent Defendants' innumerable and increasingly unrelenting torts against Plaintiff, and knowingly so, and alternatively negligently so.

94. All Defendants had express or reasonable knowledge of the wrongs conspired to be done, are/were about to be committed, including but not limited to conspiracy to interfere with Plaintiff's civil rights, and had power to prevent or aid in preventing the commission of the same, and did intentionally neglect or refuse to do, and did factually carry out steps in the furtherance of the conspiracy, or otherwise assumed complicity, allowing the conspiracy to be fully performed; and with reasonable diligence any of the Defendants could have prevented the torts committed against Plaintiff.

THIRD CAUSE OF ACTION
(20 U.S.C. § 1091 Student eligibility and Satisfactory Academic Progress)

95. Plaintiff realleges, reasserts and incorporates all set forth in paragraphs 1 through 94.

96. Defendants have repeatedly and knowingly subjected Plaintiff to knowing legal obfuscation and unrelenting torts regarding student eligibility for financial aid. Defendants have failed to comply with federal laws regarding student eligibility for financial aid.

97. Defendants knowingly, recklessly and maliciously conspired and did factually carry out steps in the furtherance of and did fully perform acts to impede Plaintiff's natural matriculation which resulted in an unduly gross accumulation of credit hours to subserve an advantage to obfuscate ineligibility for further financial aid, and economically hardship Plaintiff so as she could not afford to continue and complete her doctoral program.

98. Defendants had express or reasonable knowledge and authority to apply provisions in 20 U.S.C. 1091 (c)(3)(c) to waive the requirements regarding accumulation of credit hours that indisputably resulted from the undue hardship and special circumstances which arose from Schimmel's torts against Plaintiff, and did instead maliciously obfuscate no alternative to restore eligibility, which all Defendants fully intended to harm Plaintiff in this specific manner.

99. Defendants Schimmel, Avent and Lynch, and suspectedly unknown tortfeasors, did factually conspire, carry out steps in the furtherance of such conspiracy to unlawfully deprive Plaintiff of rights under 20 U.S.C. § 1091 and all other applicable law, and did factually commit an offense under 20 U.S.C. § 1091 from which Plaintiff's private action arises.

FOURTH CAUSE OF ACTION
(42 U.S. Code § 2000a; Title VII of Civil Rights Act of 1964 and all other applicable law)

100. Plaintiff realleges, reasserts and incorporates all set forth in paragraphs 1 through 99.

101. Defendant Schimmel, primary tortfeasor, was motivated discrimination on the basis of Plaintiff's race, gender and political affiliation.

102. All Defendants were motivated by discrimination and retaliation against Plaintiff asserting her rights against discrimination.

103. All Defendants were expressly or reasonably aware of Defendant Schimmel's prejudices, and refused or otherwise failed to take measures to prevent the harm inflicted upon Plaintiff, and instead did factually conspire with Defendant Schimmel to carry out the conspired torts, which they did fully perform, or did factually assume a complicit disposition and did not report the torts, did not truthfully provide witness during relief measures asserted by Plaintiff, and persisted in willful ignorance knowing fully all of which Plaintiff suffered.

## FIFTH CAUSE OF ACTION
### (IIED and Alternatively UIED)

104. Plaintiff realleges and reasserts all set forth in paragraphs 1 through 103.

105. Defendants have repeatedly, knowingly and recklessly subjected Plaintiff to emotional distress, and increasingly and outrageously so, since the beginning of her PhD program, and most notably even to present day.

106. After reporting Schimmel for University misconduct and violations of policy, Defendants subjected Plaintiff to five years of bullying and victimization which resulted in emotional distress, undue and unmerited delays in matriculation, excessive incurrence

of costs for tuition and fees for those additional semesters related to undue and unmerited delays in matriculation, damage to academic and professional reputation, financial hardship and lost wages from employment for which a PhD degree is requisite.

107. After reporting Avent and Lynch for University misconduct and violations of policy and federally unlawful cessation of financial aid, Defendants subjected Plaintiff to four years of coercion, bullying and victimization which has resulted in emotional distress, lost financial assistance and ability to pay for tuition and fees required to complete PhD degree program, damage to academic and professional reputation amongst other University administrators, faculty and staff, and financial hardship, having been denied income for nearly two months affecting her residential stability and other personal expenses.

108. After reporting NCAT to UNC for egregious pattern and practice of torts during her PhD program, Defendants subjected Plaintiff to increasingly aggressive, bullying and coercive victimization which has resulted in emotional distress, lost financial assistance and ability to pay for tuition and fees required to complete PhD degree program, damage to academic and professional reputation amongst other University administrators, faculty and staff, and financial hardship, having been denied income for nearly two months affecting her residential stability and other personal expenses.

109. After reporting NCAT to SACSCOC and SACS for egregious pattern and practice of torts during her PhD program, Defendants subjected Plaintiff to increasingly aggressive, bullying and coercive victimization which has resulted in emotional distress, lost financial assistance and ability to pay for tuition and fees required to complete PhD degree program, damage to academic and professional reputation amongst other

University administrators, faculty and staff, and financial hardship, having been denied income for nearly two months affecting her residential stability and other personal expenses.

110.    After reporting NCAT to State for egregious pattern and practice of torts during her PhD program, Defendants subjected Plaintiff to increasingly aggressive, bullying and coercive victimization which has resulted in emotional distress, lost financial assistance and ability to pay for tuition and fees required to complete PhD degree program, damage to academic and professional reputation amongst other University administrators, faculty and staff, and financial hardship, having been denied income for nearly two months affecting her residential stability and other personal expenses.

111.    Defendants have committed all torts herein stated, intentionally, recklessly, and outrageously with malice against Plaintiff, which has resulted in Plaintiff suffering significant emotional distress, even to the extent of physical harm, having suffered a peptic ulcer.

SIXTH CAUSE OF ACTION
(Gross and Vicarious Negligence for An Amount In Controversy Exceeding $75,000.00 USD)

112.    Plaintiff realleges and reasserts all set forth in paragraphs 1 through 111.

113.    There exists a fiduciary between Plaintiff, as current student at NCAT, and Defendants, particularly NCAT as University, at which she is enrolled for all times material hereto, having set forth policy regarding torts or policy violations committed by faculty, administrator, staff or other students against a student. State, NCAT, UNC,

SACS, SACSCOC and other Defendants have a duty to protect Plaintiff from the injuries and/or damages herein complained.

114. Defendants have failed to protect Plaintiff, and knowingly, intentionally and maliciously so. Moreover, Defendants State, NCAT and UNC who are employers of all other Defendants have failed to protect Plaintiff from their employees' tortuous misconduct, and thereby, are liable for vicarious negligence against Plaintiff.

115. Defendants have failed to uphold the fiduciary duty to properly inform Plaintiff of economical course options to complete her degree.

116. Defendants did, in fact, repeatedly, knowingly and maliciously so, violate that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists.

117. Plaintiffs relied upon the fiduciary duty that Defendants owed to them and on many occasions asserted such in their relief and remedy measures and complaints.

118. Plaintiffs' injuries are the proximate result of Defendants' breach of fiduciary duty. All of Plaintiff's injuries and/or damages directly arose from such failure detailed in paragraph 43 and 44, and expressed or otherwise implied in all other paragraphs, and where otherwise applicable in this complaint.

119. Defendants' conduct did subserve their advantage at the expense of Plaintiffs, albeit monetary or otherwise.

120. All elements for gross and vicarious negligence have been met in this matter, and Plaintiff's complaint is ripe for relief and remedy.

SEVENTH CAUSE OF ACTION
(Violations Actionable Under Federal Tort Claims Act)

121.     On or about June 17, 2019, Plaintiff escalated all claims from which she received no relief and remedy by exhausting administrative measures provided in University policy, and filed a discrimination complaint with OCR.

122.     On October 4, 2019, Plaintiff received a letter from OCR giving notice that her complaint was dismissed and no further action would be taken.

123.     Despite providing extensive detailed incidents which clearly evidence the torts committed by Defendants named herein, including but not limited to discrimination on the basis of Plaintiff's race, gender and political affiliation, and conspiracy to commit offense prohibited by federal, including but not limited to deprivation of federal financial aid assistance rights, et cetera, OCR prematurely dismissed her merited complaint. OCR failed to conduct requisite investigation into Plaintiff's claims, and thus breached the fiduciary duty it owed to Plaintiff regarding her rights against discrimination et cetera.

## E.  INJURY, ITEMS OF DAMAGE AND ELEMENTS OF DAMAGE

124.     Plaintiffs have suffered the following injuries, including but not limited to:

a.  Financial hardship, general and compensatory damages;

   i.  Plaintiff has suffered lost wages from having been delayed graduation and earned PhD degree, and consequently earned income as PhD degree holder, at a rate of approximately $125,000.00 USD per year;

   ii.  Plaintiff has suffered incurrence of additional tuition and fees costs for PLUS Loans accepted for academic terms from Fall 2016 to Fall 2018, totaling $56,000.00 USD, and $7,038.95 total tuition paid for additional academic years including summer sessions, for which her matriculation

and graduation were unduly, negligently delayed or alternatively maliciously impeded and still notably incurring to date;

iii. Plaintiff has suffered incurrence of future interest rates on PLUS Loans accepted for academic terms from Fall 2016 to present day, totaling approximately $20,000.00 USD, and still notably incurring to date;

iv. Plaintiff has suffered incurrence of additional costs for travel to meet the requirements for TA position after having had financial aid unjustly and unlawfully terminated, at a rate of $1,200.00 USD per month for gas, child care, vehicle maintenance et cetera, and still notably incurring to date;

b. Emotional distress from retaliation, coercion, bullying and victimization after justly asserting her students rights and reporting faculty and administrators misconduct and torts;

c. Peptic ulcer and medical expenses incurred for treatment and other compensatory damages, totaling $10,000.00;

d. Denied graduate student funding, assistantship, merit or need based scholarships; and because she was denied standard funding, Plaintiff has suffered incurrence of tuition and fees beginning in Spring 2014 to present day, totaling $105,000.00 USD, including both regular academic semesters and summer sessions where applicable;

e. Exposure to disdain, ridicule, and hatred from State, UNC, SACS, SACSCOC, and NCAT and North Carolina State University faculty, administrators and staff North Carolina State University;

f. Sabotage of her successful and markedly earned completion of the PhD degree program;

g. And now, the time, costs as an indigent party, albeit nominal for a non-indigent person, and emotional distress in undertaking this action to seek relief and remedy from Defendants' torts.

h. Villification and discreditation, which was recklessly, maliciously conspired, concerted and carried out to perpetuate an outrageously absurd perception that Plaintiff is/was somehow "delusional," or a liar, or merely retaliating because she is "vexed" by unfavorable and purportedly merited decisions and actions taken against her which purportedly arose from her own poor academic progress or performance and otherwise punitive in response to the same. In fact, so-called deserving federal authority Conrad deplorably used terms like "delusional" and "vexed" to describe Plaintiff, with whom he has absolutely no relationship and sorely qualifies to draw such despicably baseless conclusions. To the contrary, Plaintiff asserts Conrad's empty opining as further evidence of the constructive fraud, which entails discrimination on the basis of political affiliation, she suspects and asserts herein has been conspired against her by all Defendants. Conrad demonstrates that he is "in bed" with the Defendants, and such is a more likely valid explanation regarding his empty opining in his October 15, 2018 order, about which most markedly Plaintiff succeeded on appeal to vacate the dismissal with prejudice he ordered.

## F. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

Plaintiff has no other lawsuits or administrative actions against the Defendants.

## G. PRAYER FOR RELIEF

Plaintiffs request the following forms of relief, including but not limited to specific performance:
a.  That she be restored monetarily for all damages incurred as a result of the tortuous conduct of the Defendants;
b.  That punitive damages be awarded against one or more of the Defendants, where applicable;
c.  That she receive a formal apology from all Defendants, individually and in their official capacity;
d.  Assignment of interim advisor and dissertation committee members to carry out final matriculation requirements to complete doctoral program or substitution for dissertation and/or oral defense to complete doctoral program;
e.  And all other forms of relief for Plaintiff deemed appropriate by the court.

Submitted on this 16th day of August, 2021,

Tigress Sydney Acute McDaniel, Plaintiff, Pro Se
10926 Quality Drive Unit 38813
Charlotte, NC 28278

CERTIFICATE OF SERVICE

Plaintiff hereby certifies that a copy of the foregoing has been placed in the custody of the

United State Postal Service to be delivered upon the Defendants on this 16th day of September

2021 at the following addresses:

1. For Defendants, NCAT, Eaton, Schimmel, Avent, Lynch, McEwen, Pride, Martin,
   Waldrup, Murphy, Gloster, Holloway, Childress, Yeboah and Thomas at
   1600 East Market Street
   Greensboro, NC 27416
2. For Defendants, UNC and Meighen, at
   910 Raleigh Rd.
   Chapel Hill, NC 27514
3. For Defendants SACSCOC and SACS at
   1866 Southern Lane
   Decatur, GA 30033
4. For Defendant State at
   Josh Stein, Attorney General
   9001 Mail Service Center
   Raleigh, NC 27699-9001

Tigress McDaniel
Plaintiff, Pro Se
10926 Quality Drive Unit 38813
Charlotte, NC 28278

Date: August 16, 2021